# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

SCOTT WILLIAM JOHNSON,

       Plaintiff,

v.                                                                                          CIV 17-0510 MCA/KBM

NANCY A. BERRYHILL,
Acting Commissioner of Social
Security Administration,

       Defendant.

# **PROPOSED FINDINGS & RECOMMENDED DISPOSITION**

THIS MATTER is before the Court on Plaintiff's Motion to Reverse or Remand Administrative Agecny [sic] Decision (*Doc. 22*) filed on October 30, 2017. Having considered the record, submissions of counsel, and relevant law, the Court recommends that Plaintiff's motion be **DENIED**.[1]

## I.    Procedural History

On September 12, 2013, Mr. Scott Johnson (Plaintiff) protectively filed an application with the Social Security Administration for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. *See* Administrative Record[2] (AR) at 13, 57. Plaintiff alleged a disability onset date of January 1, 2008, but later amended his alleged onset date to September 12, 2013. *See* AR at 135, 145. Disability Determination

---

[1]   Judge Armijo entered an Order of Reference Relating to Social Security Appeals on August 15, 2017, referring this case to the undersigned Magistrate Judge "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." *Doc. 15.*

[2]   Document 18-1 contains the sealed Administrative Record. *See Doc. 18-1.* The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

Services (DDS) determined that Plaintiff was not disabled both initially (AR at 57-66) and on reconsideration (AR at 67-76). Plaintiff requested a hearing with an Administrative Law Judge (ALJ) on the merits of his SSI application. AR at 90.

Both Plaintiff and a vocational expert (VE) testified during the *de novo* hearing. *See* AR at 29-56. ALJ Barry O'Melinn issued an unfavorable decision on March 8, 2016. AR at 10-28. Plaintiff submitted a Request for Review of Hearing Decision/Order to the Appeals Council (AR at 9), which the council denied on March 7, 2017 (AR at 1-5). Consequently, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## II. Applicable Law and the ALJ's Findings

A claimant seeking disability benefits must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 416.905(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. § 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) his impairment(s) meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the assessment of the claimant's residual functional capacity (RFC), he is unable to perform

2

his past relevant work. 20 C.F.R § 416.920(a)(4)(i-iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (citations omitted). "RFC is a multidimensional description of the work-related abilities [a claimant] retain[s] in spite of [his] medical impairments." 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); *see also* 20 C.F.R. § 416.945(a)(1). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient . . . RFC to perform work in the national economy, given his age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citing *Williams v. Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988) (internal citation omitted)); *see also* 20 C.F.R. § 416.920(a)(4)(v).

At Step One of the process, ALJ O'Melinn found that Plaintiff "has not engaged in substantial gainful activity since September 12, 2013, the application date." AR at 15 (citing 20 C.F.R. §§ 416.971-.976). At Step Two, the ALJ concluded that Plaintiff "has the following severe impairments: scoliosis of the spine and history of Wilms' tumor." AR at 15 (citing 20 C.F.R. § 416.920(c)). The ALJ found the following impairments are non-severe: hypertension, fatigue, depression, and anxiety. AR at 15-18.

At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1 . . . ." AR at 18 (citing 20 C.F.R. §§ 416.920(d), 416.925, 416.926). At Step Four, the ALJ thoroughly considered the evidence of record and found that Plaintiff

> has the residual functional capacity to perform medium work as defined in 20 [C.F.R. §] 416.967(c)[,] except [he] can understand, carry out, and remember simple instructions and make commensurate work related

3

>     decisions, and respond appropriately to supervision, coworkers and work situations. [Plaintiff] can deal with routine changes in work setting, maintain concentration[,] persistence and pace for up to and including two hours at a time with normal breaks throughout the workday and is suitable for jobs involving work primarily with things and not people.

AR at 18-19.

ALJ O'Melinn concluded that Plaintiff has no past relevant work (AR at 21 (citing 20 C.F.R. § 416.965)), but he is able to perform work as a Cleaner (Hospital Setting), Dining Room Attendant/Busser, and Hand Packager. AR at 22. The ALJ ultimately determined that Plaintiff "has not been under a disability, as defined in the Social Security Act, since September 12, 2013 . . . ." AR at 23 (citing 20 C.F.R. § 416.920(g)).

## III. Legal Standard

The Court must "review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005) (internal citation omitted)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (citation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lax*, 489 F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1172 (internal quotation omitted)). "It requires more than a scintilla, but less than a preponderance." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) (internal quotation omitted) (alteration in original)). The Court will "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the

4

Commissioner's." *Id.* (quoting *Hackett*, 395 F.3d at 1172 (internal quotation marks and quotations omitted)).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotation omitted)). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotation omitted)).

## IV.  Discussion

Plaintiff asserts three issues in his Memorandum Brief in Support of Motion to Reverse or Remand Administrative Agency Decision. *Doc. 23*. First, Plaintiff argues that the ALJ failed to consider the opinion of Dr. Yeolekar-Dasari, a treating physician. *Id.* at 6-7. Second, Plaintiff contends the ALJ improperly dismissed Dr. Koewler's medical opinion. *Id.* at 7-9. Third, Plaintiff alleges that the RFC does not encompass his nonexertional impairments. *Id.* at 9-11.

### A.     Plaintiff fails to cite to any treating source medical opinion that the ALJ ignored.

Plaintiff complains that the ALJ "gives almost no acknowledgement to the treatment records and opinions of treating psychiatrist, Anjali Yeolekar-Dasari, M.D." *Doc. 23* at 6 (citing AR at 13-23). Plaintiff asserts that "Dr. Yeolekar-Dasari is a licensed Medical Doctor and Psychiatrist who . . . specializes in Psychiatry and Neurology[,]" and it was error for the ALJ to not analyze Dr. Yeolekar-Dasari's medical opinion under the

5

"treating source" rule. *Doc. 23* at 6-7 (citing AR at 310-22, 238; 20 C.F.R. § 416.927(c)(2)).

Plaintiff saw Dr. Yeolekar-Dasari six times, all in 2015: January 15, February 11, March 4, May 27, June 17, and September 9. *See* AR at 311-22. Plaintiff cites to the *treatment notes* from these six visits, but he fails to cite to a specific *medical opinion* allegedly authored by Dr. Yeolekar-Dasari or evaluated by the ALJ. *See Doc. 23* at 6-7. The ALJ need not weigh every treatment record, only medical opinions. "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(1). Dr. Yeolekar-Dasari's treatment records contain notes regarding Plaintiff's mental status at each of his visits, but they do not "contain a single medical opinion regarding plaintiff's ability to mentally or physically perform the normal tasks associated with working." *See Mayberry v. Astrue*, 461 F. App'x 705, 710 (10th Cir. 2012).

Plaintiff first presented to Dr. Yeolekar-Dasari in January 2015, with complaints that he had become a very unproductive, isolated recluse. AR at 321. The provider also noted that Plaintiff "seem[ed] to be experiencing some psychomotor retardation." Plaintiff admitted that the symptoms started after he stopped taking Klonopin (also known as Clonazepam), a medication prescribed to treat anxiety and panic disorder, "because of an inability to follow-up with" another physician. AR at 321; *see also Clonazepam*, PubMed Health, https://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0009677/?report=details. Over the

next nine months, Plaintiff consistently reported that his condition was improving. *See, e.g.*, AR at 319 (February 11, 2015 treatment note: "Plaintiff believes the clonazepam has really helped him get his anxiety under control."); 317 (March 4, 2015 treatment note: "Patient reports . . . decrease in anxiety . . . [and] believes that he is doing quite well. . . . Patient denies depression."); 315 (May 27, 2015 treatment note: "Patient reports decrease in anxiety and denies depression."); 313, 314 (June 17, 2015 treatment note: "Patient reports okay sleep and appetite and denies anxiety or depression. . . . There is no psychomotor agitation or retardation noted."); 311, 312 (September 9, 2015 treatment note: Patient states that he is "doing better." "Patient reports mood stability and significant decrease in anxiety. . . . There is no psychomotor agitation or retardation noted.").

ALJ O'Melinn acknowledged these treatment records when he noted Plaintiff's history of taking "himself off the anxiety medication in late 2014 with increased symptoms and then reported 'I'm doing better' once he again started taking the medication." AR at 18 (citing AR at 311-22). The ALJ further acknowledged Dr. Yeolekar-Dasari's records in that Plaintiff "described his mood as good and affect was bright with linear and goal-directed thought process when taking the anxiety medication." AR at 18 (citing AR at 311-22). The Court notes Dr. Yeolekar-Dasari's specific observation that Plaintiff's "anxiety disorder [is] stable on Klonopin." AR at 312.

Dr. Yeolekar-Dasari's records do not contain a "medical opinion" as defined by 20 C.F.R. § 416.927(a)(1). There is no assessment of Plaintiff's abilities despite his impairments. Moreover, the provider's prescription and manipulation of Plaintiff's medications "does not indicate any specific mental functioning related to Plaintiff's ability

7

to work . . . ." *See Martinez v. Colvin*, No. 12-cv-003066-LTB, 2014 WL 717192, at *5 (D. Colo. Feb. 25, 2014). Because Dr. Yeolekar-Dasari did not provide a medical opinion, Plaintiff's argument is misguided: the ALJ did not err in failing to evaluate a nonexistent opinion. I recommend denying Plaintiff's Motion on this issue.

  **B. ALJ O'Melinn adequately evaluated Dr. Koewler's medical opinion.**

  Dr. John H. Koewler, Ph.D., performed a one-time psychological evaluation of Plaintiff on December 16, 2014, on the referral of Plaintiff's attorney. *See* AR at 295-99. Plaintiff contends that ALJ O'Melinn failed to properly weigh Dr. Koewler's report. *Doc. 23* at 7-9.

  Dr. Koewler performed a record review, a clinical interview, and a mental status examination. AR at 295. Dr. Koewler noted that Plaintiff had "'weaned' himself off of" Klonopin only a couple of weeks before his December 2014 examination, and Plaintiff's anxiety symptoms had returned. AR at 295-96. "About a week after [Plaintiff] completely discontinued the medication he had severe panic symptoms[,] . . . insomnia[,]" and worried "excessively about the inability to sleep." AR at 296. At the time of his interview with Dr. Koewler, Plaintiff had an appointment to renew his prescription. AR at 296. Plaintiff also expressed feelings of depression at the interview. AR at 296. Dr. Koewler concluded that Plaintiff

> has a chronic anxiety disorder involving panic, generalized worry, obsessive thinking and insomnia. He avoids many activities. He has a moderate degree of depression. He has personality disorder features, being generally untrusting. He is socially isolated. He has chronic pain. It is likely that the early history of medical problems contributes to the chronic psychiatric problems.
> The combination of these problems would markedly limit occupational functioning. The panic symptoms will interfere with many activities. The panic, and depression cause social isolation and reduced motivation for

> normal goal directed activity. He is likely to have difficulty interacting with people in a work setting.

AR at 298. Dr. Koewler noted diagnostic impressions of panic disorder, generalized anxiety disorder with obsessive thinking, major depression, insomnia, somatic symptom disorder (pain), and paranoid and avoidant personality features. AR at 299. Dr. Koewler further assessed that Plaintiff would have no limitations in his ability to be aware of normal hazards and give appropriate responses; mild limitations in his abilities to understand and remember both simple and complex instructions, work without supervision, and adapt to changes in the workplace; moderate limitations in his abilities to attend and concentrate and interact with public, coworkers and supervisors; and marked limitations in his abilities to carry out instructions and use public transportation. AR at 298-99.

"When considering the weight of non-treating sources, the ALJ must consider" the factors as laid out in 20 C.F.R. § 404.1527(c) and § 416.927(c). *See Gallegos v. Berryhill*, CIV 16-1193 KBM, 2017 WL 6375613, at *4 (citing *Dingman v. Astrue*, No. 08-cv-02175-PAB, 2010 WL 5464301, at *4 (D. Colo. Dec. 29, 2010) (internal citation omitted)). The factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (quotations omitted).

With respect to the first and fifth factors, ALJ O'Melinn noted that Plaintiff "was referred to Dr. John Koewler, Ph.D., consultative examiner, by" Plaintiff's attorney for a one-time examination. AR at 17 (citing AR at 295-99). With respect to the second factor, the ALJ mentioned the types of testing Dr. Koewler performed. AR at 18. The ALJ also emphasized the fact that Plaintiff "underwent the examination by Dr. Koewler not in an attempt to seek treatment for symptoms, but rather through attorney referral in an effort to generate evidence for the hearing. Furthermore, Dr. Koewler was presumably paid for the report." AR at 18.

Regarding the third factor, the ALJ noted that despite the diagnoses Dr. Koewler made, the psychologist also found Plaintiff "was cooperative, calm, alert, serious, and related in a pleasant manner." AR at 17; *see also* AR at 298.

With respect to the fourth factor, ALJ O'Melinn discussed why he found Dr. Koewler's opinion inconsistent with the record as a whole. The ALJ observed that Plaintiff "was treated at Christius [sic] St. Vincent Behavioral Health in the Medication Management Clinic and in January [2014]³ it was noted [that he] reported his panic attacks appear to be under control with the clonazepam." AR at 18 (citing AR at 286). In another part of his opinion, the ALJ referred to Plaintiff's hearing testimony, noting that "the anxiety medication has reduced the amount of panic attacks." AR at 16; *see also* AR at 39-40. This is inconsistent with Dr. Koewler's opinion that Plaintiff's "panic symptoms will interfere with many activities." AR at 298. The ALJ explained that Plaintiff

---

³ The ALJ actually recorded this date as 2009, but that appears to be a typographical error. AR at 18. The record the ALJ cites is dated January 7, 2014, and the information on the record matches the information the ALJ mentions. AR at 286 ("It was after [08/2009] that the patient began experiencing panic attacks. . . . The patient has been treated with clonazepam and that seems to have worked well for him over the past several years.").

10

had "taken himself off the anxiety medication in late 2014 with increased symptoms and then reported 'I'm doing better' once he again started taking the medication." AR at 18; *see also* AR at 311. ALJ O'Melinn also observed Plaintiff's description of his mood as "good" and Dr. Yeolekar-Dasari's treatment notes, which described Plaintiff as having a "bright" affect "with linear and goal-directed thought process when taking the anxiety medication." AR at 18; *see also* AR at 312. These notes, made months after Plaintiff became compliant with his medication again, show that Dr. Koewler's opinion is inconsistent with later observations made by Plaintiff's treating psychiatrist.

Plaintiff takes particular issue with the fact that the ALJ discounted Dr. Koewler's opinion because he was a paid consultative examiner. *See Doc. 23* at 8. If this were ALJ O'Melinn's sole reason for discounting Dr. Koewler's opinion, that might pose a problem. That it was a consideration among many was not inappropriate. *See, e.g.*, *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003) (noting that an acceptable medical source is not considered to be a "treating source if [the] relationship with the source is [based] solely on [the claimant's] need to obtain a report in support of [a] claim for disability") (quoting 20 C.F.R. § 416.927(a)(2)). The ALJ offered several valid reasons for discounting Dr. Koewler's opinion. Moreover, as the Commissioner points out, Plaintiff's RFC ultimately incorporates several of Dr. Koewler's less extreme findings. *See Doc. 25* at 12-13. For example, Dr. Koewler's opinions on Plaintiff's mild limitations in his abilities to understand and remember simple or complex instructions, work without supervision, and adapt to workplace changes, as well as Plaintiff's moderate limitation in his ability to attend and concentrate are consistent with the abilities needed for unskilled work. *See id.* (citing SSR 96-9p, 1996 WL 374185, at *9

(July 2, 1996); SSR 82-41, 1982 WL 31389, at *2 (Jan. 1, 1982); *Bales v. Colvin*, 576 F. App'x 792, 798 (10th Cir. 2014)).

Because ALJ O'Melinn's analysis complied with 20 C.F.R. § 416.927(c), I recommend denying Plaintiff's motion on this issue.

**C.    Plaintiff has not demonstrated that the ALJ inadequately determined Plaintiff's RFC.**

Finally, Plaintiff contends that ALJ O'Melinn failed to incorporate several nonexertional impairments into Plaintiff's RFC. *Doc. 23* at 9. Plaintiff bases his argument on Dr. Koewler's diagnoses of "panic disorder, generalized anxiety disorder with obsessive thinking, major depression, insomnia, somatic symptom disorder, and paranoid and avoidant personality features." *Id.* (citing AR at 299). Plaintiff emphasizes Dr. Koewler's opinion that "the combination of these problems would *markedly* limit occupational functioning . . . ." *Id.* Plaintiff cites to treatment records from Dr. Armstrong (AR at 245-50), Dr. Holzgang (AR at 286,-87), Dr. Daly (AR at 306), and Dr. Yeolekar-Dasari (AR at 312, 314, 316, 318-20, 322), and asserts that their records support Dr. Koewler's findings. *Id.* at 10.

Dr. Armstrong, a psychiatrist with Christus St. Vincent Regional Medical Center, saw Plaintiff from November 10, 2011, through June 11, 2013. *See* AR at 245-50. She noted his diagnosis as generalized anxiety disorder and observed that he was taking clonazepam. AR at 245-50. On May 29, 2012, Dr. Armstrong recorded that Plaintiff "has plenty of work lined up for the summer[,]" and on June 11, 2013, she noted that plaintiff is "working some now, considering going back to school, would like to study geology." AR at 248, 245.

Dr. Holzgang, another provider at Christus St. Vincent, saw Plaintiff on January 7, 2014. AR at 286-87. He noted a diagnostic impression of "panic disorder without agoraphobia" but stated that Plaintiff "notes that with the clonazepam, the way he is taking it now, his panic attacks appear to be under control. He feels good about how he is doing generally." AR at 287.

Dr. Daly saw Plaintiff on an emergent basis on December 15, 2014. AR at 306. As discussed above, this is the time period wherein Plaintiff had suddenly stopped taking his Klonopin and realized his mood was worsening. *See* AR at 306. Dr. Daly renewed Plaintiff's clonazepam prescription. AR at 306.

There is nothing in these cited records that shows the ALJ's decision is not supported by substantial evidence. If anything, Plaintiff is asking the Court to reweigh the evidence, which would be inappropriate. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (noting that the court "may neither reweigh the evidence nor substitute" its opinion for that of the Commissioner's) (quotation omitted). I recommend denying Plaintiff's motion on this issue.

**D.      Plaintiff waived any remaining issues.**

In his reply brief, Plaintiff argues for the first time that the ALJ failed to consider a Third Party Function Report submitted by Plaintiff's mother, as well as Plaintiff's "poor earning's record." *Doc. 26* at 3-4. Plaintiff is incorrect, as the ALJ considered both the mother's Third Party Function Report (AR at 21) as well as Plaintiff's poor earning's record (AR at 19). Regardless, the Court need not consider arguments raised for the first time in a reply brief. *See Mehaffey v. Berryhill*, Civ. No. 16-78 MV/GJF, 2017 WL 3190656, at *5 (D.N.M. Apr. 25, 2017) (citing *Guidry v. Astrue*, Civ. No. 08-1846, 2009

13

WL 4884282, at *5 n.8 (D. Colo. Dec. 10, 2009) (citing *M. D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 768 n.7 (10th Cir. 2009) (noting that "the general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief"))). Therefore, I recommend the Court find Plaintiff has waived this issue.

V.      **Conclusion and Recommendation**

I recommend the Court find that the ALJ followed the rules of law and sufficiently considered the treatment records of Dr. Yeolekar-Dasari and the medical opinion of Dr. Koewler, and adequately assessed Plaintiff's RFC. I further recommend the Court find that the ALJ's findings are supported by substantial evidence.

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion to Remand be denied.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE